## OPPENHEIMER v. MILLER.    (No. 8823.)

(Court of Civil Appeals of Texas. Dallas. May 12, 1923.)

**1. Trial ☞350(4)—Refusal to submit special issue whether owner authorized broker to find purchaser at first meeting not error.**

In broker's action for commission, the court was not required to submit as a special issue the question whether defendant on plaintiff's first visit to his office requested plaintiff to find a purchaser for the property, where plaintiff did not contend that anything said on such visit constituted any part of the contract sued on, and defendant denied any contract.

**2. Trial ☞350(4)—Refusal to submit issue whether owner agreed to pay broker commission out of first payment held not error.**

Where, in a broker's action for commissions, there was no evidence that $5,750 cash was to be paid as the first installment on the total consideration of $15,750, or that the purchaser was to pay $5,000 cash to the owner and $750 to plaintiff broker in payment of commissions, a special issue at defendant's request whether he, defendant, agreed to accept $5,000 in cash and pay the broker a commission of $750 out of that $5,000 *held* not a legitimate one, and refusal to give not error.

**3. Trial ☞350(4)—Refusal to give special issue whether owner agreed to take part of cash in notes not error, where defendant denied any trade.**

Where, in an action by a broker for commissions in procuring a purchaser of defendant's property, plaintiff testified defendant did not

agree to take any part of the cash consideration of $5,000 in notes, and defendant denied any trade at all, the issue was not specifically raised, and it was proper to refuse to submit it.

**4. Trial ☞350(4)—Refusal to submit issue whether owner instructed broker as to manner of drawing notes forming part of consideration held not error.**

In an action by a broker for commissions in procuring a purchaser of defendant's property, refusal to submit at defendant's request special issue whether defendant instructed plaintiff to draw notes forming the consideration *held* not error, where defendant examined all the terms of contract submitted and suggested no changes to plaintiff, except amount of cash payment and rate of interest, which changes plaintiff made, and in view of jury's finding on special issues that defendant agreed with plaintiff that latter could secure the purchaser, and that the plaintiff did find a purchaser ready to buy on terms named by defendant.

Appeal from Dallas County Court; Frank G. Harmon, Judge.

Action by Henry S. Miller against Louis Oppenheimer. Judgment for plaintiff, and defendant appeals. Affirmed.

W. L. Thornton, J. L. McNees, and Oscar D. Montgomery, all of Dallas, for appellant.

Whitehurst & Read and L. H. Betts, all of Dallas, for appellee.

HAMILTON, J. This is a suit for the recovery of a commission by a real estate agent for the sale of certain residential property in Dallas alleged to have been made by appellee, who was the plaintiff below.

It was alleged that appellant listed the property with appellee for sale upon the following terms: $15,750, payable as follows: $5,000 cash and $2,687.50 payable at or before the expiration of one year thereafter, and the same amount payable on or before the expiration of two years, or three years, and of four years after date; the deferred payments to be evidenced by four notes payable respectively at the end of one, two, three, and four years after date with interest at the rate of 7 per cent. per annum.

The issue having been joined, the case was tried before a jury and was submitted upon special issues in connection with a correct charge as to the burden of proof. The issues submitted and the respective answers of the jury thereto were as follows:

"Did the defendant, Oppenheimer, ever agree with plaintiff, Miller, that he (Miller) could secure a purchaser for the property in question? Answer Yes or No. Answer: Yes.

"Did the defendant, Oppenheimer, ever tell plaintiff, Miller, upon what terms and conditions he (Oppenheimer) would sell the property in controversy? Answer Yes or No. Answer: Yes.

"Did the plaintiff Miller secure a purchaser who was ready, willing, and able to purchase the property upon the terms and conditions under which defendant, Oppenheimer, would sell, if you have found from the evidence that defendant, Oppenheimer, agreed to sell upon any agreed terms or conditions? Answer Yes or No. Answer: Yes."

All of the issues presented were clearly raised by the evidence, which fully supported each of the answers rendered by the jury.

[1] Appellant requested the following special charge, which was refused by the court:

"Did Oppenheimer, on the occasion of Miller's first visit to his office, request Miller to find him (Oppenheimer) a purchaser for his property?"

The proof disclosed that Miller called on appellant several months before the date on which he claimed to have made the sale for Oppenheimer, and asked if his property was for sale. There is some conflict between testimony of appellant and appellee as to the substance of the conversation which passed between them at that time, but the variance is immaterial because there is no contention that any agreement was then arrived at which had any bearing whatever upon the sale appellee claims to have made. Appellee seems not to contend that anything said at that time constituted any part of the obligation which he relied upon in this case. Appellant contended that he never authorized appellee at any time to sell the property. Appellee asserted a contract of agency made at a date subsequent to his first visit to appellant, which asserted contract bore no relation whatever to the first visit. We are therefore of the opinion that the question did not present a proper or material issue, and that the court correctly declined to submit it.

The court refused to give a special issue requested by appellant which was as follows:

"Did Oppenheimer agree to accept $5,000 in cash and pay Miller a commission of $750 out of the $5,000 cash payment?"

Appellant complains that the court erroneously refused to submit this issue.

Appellee testified that the first time he had a conversation with appellant in which the latter submitted to him a definite price for the property the property was listed at $12,500. He testified that this was seven or eight months prior to the time he made the transaction upon which he claims a commission. He testified that some time thereafter he went to appellant and told him that he had a client who might be interested in the property, and inquired of Oppenheimer if he was still willing to sell, and that Oppenheimer replied that he was, and stated that he wanted $15,000 for the property. Appellee testified that no terms were then discussed. According to his testimony, Miller was deal-

ing with a Mr. Schaerdel and Schaerdel's agent. He testified that after the $15,000 offer was made he took it up with Schaerdel through Schaerdel's agent. Schaerdel then, according to Miller's testimony, made an offer of $14,000, stating that terms could be discussed afterwards if the price should be satisfactory to Oppenheimer. The offer was declined by Oppenheimer, who stated that he would not take less than $15,000 net for the property. It was testified that $15,000 gross was thereupon offered by Schaerdel, the proposition being that $3,000 cash was to be paid, and the balance in notes bearing interest at the rate of 6 per cent. per annum. A contract was prepared containing these provisions; the deferred payments being $3,000 each. This was submitted to Oppenheimer, and he declined to sign it, for the reason that he wanted $15,000 net. Miller testified that when Oppenheimer declined to accept the written offer or contract he then requested Oppenheimer to read it over in order that he might ascertain whether or not the terms and conditions were satisfactory. He swore that Oppenheimer did read it over, and thereupon stated that he would not take less than $5,000 cash, the deferred payments bearing 7 per cent. interest, and with a rental agreement that he (Oppenheimer) was to rent the premises from Schaerdel at $75 per month. A contract was then prepared and signed by Schaerdel by the terms of which Schaerdel bound himself to pay $15,750 for the property, $5,000 cash, and the balance in deferred payments evidenced by four promissory notes each for $2,687.50, bearing interest at the rate of 7 per cent. per annum and payable, respectively, on or before one, two, three, and four years after date. According to the evidence given by Miller, the purpose of making the total consideration $15,750 was to secure to appellant $15,000 net, the $750 being to cover the commission. Appellee testified that nothing was said at any time about the $5,000 cash payment being a net cash payment. According to his testimony, the only proposition as to a net amount was that the total net consideration to be received by Oppenheimer should be $15,000. Oppenheimer himself testified that he never agreed to sell the property for $15,000 net to him. He swore that when the offer was submitted to him he refused to sign the contract and stated that he would have to consider it at least two weeks. He also stated that he told the agent he would not entertain less than $5,000 cash on a $15,000 deal. Oppenheimer testified that when the contract was submitted to him he informed Miller that he would not pay the commission, and that Miller stated he did not know whether he could get the other party "to honor it or not."

[2] There is no testimony whatever to the effect that $5,750 cash was to be paid or that Schaerdel was to pay $5,000 cash to Oppenheimer and $750 of the consideration in cash to the agent, leaving only a balance of $10,000 in deferred payments. The evidence being to the effect above stated, we do not think the issue requested by appellant, and refused by the court, as to whether or not Oppenheimer agreed to accept $5,000 in cash and pay Miller a commission of $750 out of it was a legitimate one. Accordingly, in our judgment, the court did not err in refusing to submit the issue.

[3] The court did not err in refusing to give at appellant's request a special issue as to whether or not Oppenheimer agreed to take any part of the cash consideration of $5,000 in notes. This issue was requested upon the theory that the proof raised an issue as to whether or not appellant was to receive $5,000 net after payment of the commission of $750. Since Miller positively testified that there was no such agreement, and since Oppenheimer denied that there was any trade at all, we do not think the issue was specifically raised by the evidence, and accordingly it was proper to refuse to submit it.

[4] There was no error in the action of the court in refusing to submit a special issue requested by appellant as to whether or not Oppenheimer instructed Miller how to draw the notes which were to form a part of the consideration. The issue as to whether or not Oppenheimer agreed with Miller that the latter could secure a purchaser for the property (it appearing from the proof that Oppenheimer knew Miller was a real estate broker) was submitted and affirmatively answered by the jury, and also that Miller did find a purchaser ready, willing, and able to purchase the property upon the terms and conditions of sale made by appellant, which issue was also answered in the affirmative, and, the testimony of Miller disclosing that he submitted to Oppenheimer a writing containing terms of sale which he requested Oppenheimer to inspect to ascertain whether or not they were satisfactory, and it further appearing from Miller's evidence that Oppenheimer did inspect the instrument and expressed no disapproval, except with reference to the amount of the cash consideration being changed from $3,000 to $5,000, and the rate of interest being increased from 6 per cent. to 7 per cent. on the deferred payments, it was immaterial whether or not Oppenheimer specially instructed Miller as to how the notes for the deferred payments were to be drawn. There is no claim on the part of Miller that Oppenheimer gave him specific instructions as to how to draw the notes. Miller's contention was that he himself indicated how the deferred payments should be made and submitted the plan to Oppenheimer for approval. Oppenheimer approved the plan as to deferred payments by offering no suggestion as to any changes in it at the

time Miller requested him to inspect the terms in order that it might be determined whether or not they were satisfactory. This is Miller's testimony. Miller swore that he asked Oppenheimer to look at all the terms embodied in the $15,000 contract at the time Oppenheimer refused it, in order that Miller might know what terms suited Oppenheimer before the proposition of $15,000 was submitted to Schaerdel. Oppenheimer, if Miller's testimony is to be accepted, as it was by the jury, examined all the terms, including the provisions for notes, and suggested no changes except as to the amount of the cash payment and the rate of interest.

We have carefully considered all of the assignments of error, and are of the opinion that the case was correctly submitted to the jury upon issues determinative of every essential question. These issues having been answered favorably to appellee, there was no error in the judgment entered in conformity with the answers, and it is accordingly affirmed.

Affirmed.